**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

   Plaintiff – Appellee,

v.

JOHN MIGUEL SWAN,

   Defendant - Appellant.

No. 11-6196
(D.C. No. 5:10-CR-00308-D-1)
(D. W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

   A jury determined John Miguel Swan knowingly possessed a firearm after a

previous felony conviction in violation of 18 U.S.C. § 922(g). He appeals from his

conviction and claims the district court, (A) should have granted his motion to suppress

the gun and ammunition because they were the result of an unjustified traffic stop; (B)

---

   [*] Oral argument would not materially assist the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

   This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

erroneously admitted testimony about his aggressive and threatening behavior after his arrest; and (C) erred in denying his motion for acquittal. We AFFIRM.

## FACTUAL BACKGROUND

At approximately 3:00 a.m. on August 7, 2010, Sergeant Chris Spillman of the Oklahoma City Police Department was patrolling in S.E. Oklahoma when he noticed a car turning south from 32d Street on to Oklahoma Avenue. Spillman made a u-turn in the intersection and began to follow the car to check the vehicle license tag number to see if the vehicle was stolen. As he followed the car, it began to speed up. Spillman visually estimated the car was going around 30 m.p.h. in a 25 m.p.h. zone. As the car reached the corner of the next block, it turned right on to S.E. 33d Street, travelling about 30-35 m.p.h. in a 25 m.p.h. zone. At the next corner, the car again turned right on to Shields Boulevard. The turn placed the car directly in front of Sergeant Coy Gilbert's patrol car. Spillman radioed Gilbert and asked him to get the tag number. Gilbert followed the car northward to the corner of Shields and S.E. 32d where the car took a left, drove into a driveway, and stopped. Gilbert estimated the car was travelling 35-40 m.p.h. on 33rd and exceeded the 40 m.p.h. speed limit on Shields.[1]

Gilbert followed the car, with Spillman behind, to the driveway. There, Gilbert pulled behind the car within clear sight of the driver's side while engaging his spotlight. Gilbert saw the driver, Swan,[2] place his left arm out the window and throw a metal-plated

---

[1] Gilbert also testified Swan failed to signal when he turned left on to S.E. 32d and when he pulled in the driveway from the road.

[2] Swan was accompanied by one passenger, his girlfriend Christy Moore.

- 2 -

pistol approximately ten to twelve feet from the car. Gilbert immediately approached Swan, who was getting out of the car, and placed him in handcuffs. As Gilbert was arresting Swan, Spillman arrived and Gilbert directed him to the location of the gun. Spillman found a .380 semiautomatic pistol loaded with one hollow-point bullet in the chamber and five more in the magazine.

After his arrest, Swan became agitated and physically aggressive. He began kicking the patrol car window, attempted to get out of the back seat, and kicked toward Spillman when Spillman attempted to restrain him. Swan, mimicking the pulling of the trigger of a gun, threatened the officers' families and said he would find and shoot Spillman and Gilbert.

## PROCEDURAL BACKGROUND

Swan was indicted on one count of knowing possession of a firearm and ammunition by a person previously convicted of a felony. Prior to trial, he filed a motion to suppress the gun and ammunition, claiming he was detained without reasonable suspicion of criminal activity. After a hearing at which both Spillman and Gilbert testified, the court denied the motion. It found the testimony of the officers - that they had seen Swan speeding - "fully credible" and therefore they were justified in stopping and detaining Swan. (Vol. 1 at 78.)

Prior to trial, Swan also moved to exclude testimony regarding his behavior after his arrest. According to the government, the evidence was admissible under Federal Rule of Evidence 404(b). The court permitted the government to introduce testimony of Swan's verbal threats to shoot the officers and his hand gestures that connoted shooting

- 3 -

as evidence of his knowledge and intent to possess the gun. However, evidence of his combative conduct would not be admitted.

Following the presentation of the government's case, Swan moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 for two reasons: First, the government failed to present evidence that Swan possessed the gun and second, the government failed to show a sufficient nexus between his possession of the gun and its effect on interstate commerce, the jurisdictional element of the charge. Swan also proffered a jury instruction requiring the government to prove his "possession [of the gun and ammunition] had a substantial relation to interstate or foreign commerce, and not merely a potential effect." (Vol. 1 at 30.) The court denied the motion and refused the instruction because it incorrectly stated the law.[3] See *United States v. Urbano*, 563 F.3d 1150, 1152 (10th Cir. 2009) ("[T]his court's precedent makes clear the government can meet § 922(g)(1)'s jurisdictional element by showing the firearm traveled in interstate commerce at some point in the past."). The jury convicted and the court sentenced him to imprisonment for 100 months.

## DISCUSSION

A.    Motion to Suppress Evidence

In his motion to suppress evidence, Swan argued the "two police officers began a pursuit without an observation of a traffic violation and followed [Swan] for

---

[3] Swan acknowledges his argument is contrary to our precedent, but asks that we reject those cases. That we cannot do. *See United States v. Urbano*, 563 F.3d 1150,1154 (10th Cir. 2009). We, therefore, do not consider his claims related to the interstate nexus.

- 4 -

approximately three and one half blocks.  Mr. Swan submitted to the 'show of authority' of these officers by pulling into a driveway."  (Vol. 1 at 12.)  The district court disagreed, concluding there was no show of authority when the officers followed Swan without engaging their lights or siren, or otherwise indicating he must stop.  Moreover, the officers credibly testified they had observed speeding violations, thus establishing at the very least reasonable suspicion for the stop.  (Vol.1 at 77-78.)

"[W]e review legal questions *de novo* but view the facts in the light most favorable to the government as the prevailing party."  *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. ) *cert denied* 132 S. Ct. 306 (2011).  "We also accept the district court's specific factual findings unless clearly erroneous—no easy hurdle to clear, requiring the defendant to show that the findings are more than possibly or even probably wrong but pellucidly so."  *Id.*

A traffic stop is a Fourth Amendment seizure which must be supported by reasonable suspicion.  *Brendlin v. California*, 551 U.S. 249, 255 (2007); *United States v. McGhee*, 672 F.3d 860, 866-67 (10th Cir. 2012).  The point at which a person is seized occurs "when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement."  *Brendlin*, 551 U.S. at 254 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).  "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."  *Id*.

On appeal, Swan presents a more specific argument.  He argues "Swan was

'seized' when Officer Gilbert pulled 'as close as possible' to him on Shields Boulevard."
(Appellant's Br. at 8.) He claims Gilbert had seen no traffic violations at that time and
Swan submitted to Gilbert's authority by turning left at the next intersection and pulling
into the first driveway. We need not decide whether closely following Swan was a show
of authority or whether his exit from the road into a driveway was submission because
Gilbert had reasonable suspicion for the stop of Swan before the alleged seizure. Gilbert
suppression hearing testimony established Swan's speeding violation before Swan turned
onto Shields Boulevard.

Swan acknowledges Gilbert's testimony estimating Swan's speed at 30-35 m.p.h.
prior to the close pursuit, but argues the estimate was based only on a visual
approximation. That much is true, but it does not help him. "[A]n officer's visual
estimation can supply probable cause to support a traffic stop for speeding in appropriate
circumstances." *Ludwig*, 641 F.3d at 1247. Further, on appeal, we do not assess the
credibility of the witnesses. *United States v. Avery*, 295 F.3d 1158, 1167 (10th Cir.
2002). Gilbert is a veteran officer with substantial experience estimating speed. Not only
did the district court find Gilbert's testimony credible, but the jury apparently did as well.
There was no error in denying Swan's motion to suppress.

B.      Admission of Conduct After Arrest

Swan claims Spillman's testimony about Swan's post-arrest conduct was
improperly admitted under Federal Rule of Evidence 404(b) as probative of his
knowledge and intent to possess a handgun. He claims his statements to the officers that
he would shoot them and his gesture similar to pulling a trigger had no relation to the

crime charged. "Admission of evidence under . . . Rule . . . 404(b) is reviewed under an abuse of discretion standard." *United States v. Diaz*, No. 10-2252, 2012 WL 1592967, at *5 (10th Cir. May 8, 2012) (quotation marks omitted).

> Rule 404(b) requires a four part test:
>
> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*Id. (*quoting *United States v. Morris,* 287 F.3d 985, 990 (10th Cir. 2002)). Evidence is proper if it tends to prove, among other things, motive, knowledge, or intent. Fed. R. Evid. 404(b)(2). "[E]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *Diaz*, at *5. (quoting *United States v. Tan,* 254 F.3d 1204, 1211 (10th Cir. 2001)).

The district court did not abuse its discretion because the evidence revealed Swan's intent and absence of mistake. We have long held that "threats to a prosecution witness [are] admissible as showing consciousness of guilt if a direct connection is established between the defendant and the threat." *United States v. Smith*, 629 F.2d 650, 651-52 (10th Cir. 1980). In *United States v. Esparsen*, we clarified that the reference to "consciousness of guilt" in *Smith* was implicitly an application of Rule 404(b) "[b]ecause matters such as motive, intent, plan, or knowledge essentially involve 'consciousness of guilt.'" 930 F.2d 1461, 1476 n.16 (10th Cir. 1991). Here, Swan directly threatened the arresting officers; one, if not both, of whom would necessarily be called as a prosecution

witness. Consciousness of guilt is highly probative of an absence of mistake in circumstances such as these. Moreover, Swan's shooting gesture, as opposed to any other type of threatening movement, is telling. It was relevant to show his intent to possess a firearm – an element he denied at trial.[4] Swan's threats and hand motions were offered for a proper purpose and relevant to an essential element of the charge.

The district court also found the probative value of the evidence outweighed any unfair prejudice to Swan. On appeal, Swan argues, "The prejudicial effect of the testimony is quite obvious. The probative value is not." (Appellant's Br.at 17.) We disagree. The court did not abuse its discretion in finding the probative value was not outweighed by unfair prejudicial effect. Finally, although the defendant declined the court's offer to give a limiting instruction, a similar-acts instruction was given instructing the jury it "may consider this evidence only as it bears on the defendant's intent, knowledge or absence of mistake or accident." (Vol. 1 at 107.) The district court correctly determined the evidence of Swan's threats and gestures was admissible.

C.      Motion for Acquittal

On appeal, Swan concedes the evidence was sufficient to establish his possession of the pistol, but claims "there was no testimony presented that the pistol was a 'firearm.'"[5] (Appellant's Br. at 18.) "We review the record for sufficiency of the

---

[4] Swan called Christy Moore to testify she never saw Swan throw anything from the car and never saw a firearm.

[5] The government does not argue Swan waived this issue by failing to raise it below. Therefore we address it on the merits.

evidence *de novo* " to determine whether "a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *Diaz*, 2012 WL 1592967, at *2 (quotation marks omitted).

The jury was instructed that to convict Swan, the government must prove he "knowingly possessed a firearm or ammunition as alleged in the Indictment." (Vol. 1 at 109.) A "firearm" was defined as "any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive." (*Id*. at 110.) Swan argues the government failed to prove the pistol Gilbert found was "designed to expel a projectile by the action of an explosive." (Appellant's Br. at 20.) Although Swan concedes a gun and ammunition expert testified he had examined the gun and it had performed as designed when test-fired, he argues this testimony is insufficient because the expert's words could also describe an "air pistol" which is not considered a firearm. (*Id*. at 21.) This argument is patently frivolous. Swan ignores Spillman's testimony describing the loaded gun and explaining the meaning of "semiautomatic." (Vol. 3 at 190-93.). He also fails to mention Gilbert's testimony that the gun was loaded with "hollow-point bullets." (*Id*. at 243.) Given the evidence and the reasonable inferences therefrom, the government established Swan's possession of a firearm.

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge